## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ANNETTE HANLIN-COONEY, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Case No. WDQ-13-1731 |
| | * | |
| FREDERICK COUNTY, MARYLAND | * | |
| et al., | * | |
| | * | |
| Defendants. | * | |

******

## MEMORANDUM

Plaintiff Annette Hanlin-Cooney, individually and as personal representative of the estate of her deceased son, William John Hanlin, filed the instant lawsuit against Defendant Frederick County, MD ("Frederick County") and several others, including Frederick County Sheriff Charles Jenkins, Warden William V. DeLauter, and Correctional Officers David DeGrange and Robert Swailes (collectively "the Defendants").[1] Ms. Hanlin-Cooney's nine-count Complaint alleges tortious conduct and several violations of Mr. Hanlin's constitutional rights, stemming from Mr. Hanlin's suicide while an inmate at the Frederick County Adult Detention Center ("FCADC"). Now pending is the Defendants' Motion for Appropriate Relief, which has been referred to me for disposition. [ECF Nos. 30, 36]. I have considered Plaintiff's Response in Opposition [ECF No. 35] and the Defendants' Reply thereto. [ECF No. 38]. An evidentiary hearing was held on May 29, 2014, at which the Defendants adduced the evidence supporting their motion.[2] Although a continued hearing was scheduled to allow Plaintiff's witnesses to

---

[1] Ms. Hanlin-Cooney also sued: (1) Conmed Healthcare Management, Inc. ("Conmed"); (2) Correctional Mental Health Services, LLC ("CMHS"), a subsidiary of Conmed; (3) Janetta Moore, an employee of Conmed or CMHS; (4) Jessica Kissane, an employee of Conmed or CMHS; and (5) John and Jane Does 1-25, described as "employees, agents and/or servants" of the Defendants. *See* Compl. ¶¶ 28-32.

[2] In the interest of expeditiously adjudicating the Defendants' motion, the Court ordered a transcript of portions of the evidentiary hearing. *See* ECF No. 52. The partial transcript is cited throughout this memorandum and has been placed on the docket for the parties' reference. *See* ECF No. 53.

testify, for the reasons described below, I do not need to hear from Plaintiff's witnesses in order to rule in her favor. The Defendants' motion is DENIED.

## I.   BACKGROUND

This dispute arises from communications between Plaintiff's attorneys who work at the law firm of Bode & Grenier, LLP ("Bode & Grenier"), and Defendant David DeGrange. Bode & Grenier attorneys currently represent plaintiffs in three pending cases, including the instant lawsuit, where claims have been asserted against Frederick County for inmate suicides. *See Fether v. Frederick Co. et al.*, No. 12-1674-CCB; *Hosie v. Jenkins et al.*, 13-3033-JFM.[3] Ms. Hanlin-Cooney commenced this lawsuit on June 14, 2013. *See* Compl., ECF No. 1. Most of the facts relevant to this motion are undisputed. To the extent that there are discrepancies between the facts presented by the Plaintiff and the Defendants, the Court has relied upon the facts as presented by the Defendants, as the moving party, for the limited purpose of adjudicating this motion.

Both parties acknowledge that at times before the filing of this suit, attorneys at Bode & Grenier communicated with Mr. DeGrange. Defs.' Mem. 11–15; Pl.'s Resp. 4–12. Mr. DeGrange was not represented by counsel during those communications. The communications between Mr. DeGrange and attorneys with Bode & Grenier began when Mr. DeGrange learned from a newspaper article that Bode & Grenier was representing the family of Ms. Valerie Miller, an inmate at FCADC who committed suicide. DeGrange Aff. ¶ 1. As a former correctional officer at FCADC, Mr. DeGrange reached out to Bode & Grenier to "give them some insight into some practices that [he] thought would improve conditions for the inmates and also make things better for the correctional officers at the Frederick County Adult Detention Center." *Id*. Mr.

---

[3] Mr. DeGrange is not a named defendant in either the *Fether* or *Hosie* case.

DeGrange initially spoke with a lawyer he identified as "Brett" from Bode & Grenier.[4] DeGrange Aff. ¶ 2.  Mr. DeGrange spoke with that lawyer several times.  DeGrange Aff. ¶ 2. Mr. DeGrange was aware that Bode & Grenier was representing Plaintiff Hanlin-Cooney, but, at the time of the communications in question, no lawsuit had yet been filed.  *Id.*

Mr. DeGrange's next contact with counsel from Bode & Grenier arose when Jacob C. Lebowitz, a Bode & Grenier attorney, contacted Mr. DeGrange to arrange a meeting for the purpose of signing a declaration that Mr. Lebowitz had drafted.  Pl.'s Resp. 5.  Mr. Lebowitz met Mr. DeGrange in Frederick, Maryland on June 24, 2011, and Mr. DeGrange signed the declaration.  *Id.*  The declaration described certain details surrounding the deaths of inmates Valerie Miller and William John Hanlin.  Lebowitz Decl. Ex. A.

On July 3, 2012, William Cowden, Esq. and a private investigator from Bode & Grenier traveled to Frederick County to speak with witnesses, including Mr. DeGrange.  Pl.'s Resp. 9; DeGrange Aff. ¶ 4.  During that  meeting, Mr. Cowden and Mr. DeGrange spoke about the suicide of Mr. Hanlin.  DeGrange Aff. ¶¶ 4–7.  Mr. Cowden attests that before any questioning began, he informed Mr. DeGrange that he worked for Bode & Grenier, and that the firm represented Mr. Hanlin's mother as well as several other plaintiffs in FCADC suicide cases. Cowden Decl. ¶ 6.  Mr. Cowden states that he then asked Mr. DeGrange whether he was represented by counsel, to which Mr. DeGrange replied that he was not.  Cowden Decl. ¶ 7.

Thereafter, Mr. DeGrange spoke with Mr. Cowden on several occasions.  DeGrange Aff. ¶ 4.  Mr. DeGrange felt that Mr. Cowden was his friend and "on [his] side from the beginning." *Id.*  Although Mr. Cowden told Mr. DeGrange that he would be named in the lawsuit, Mr. Cowden also assured Mr. DeGrange that, "when they sue, they would be going after the County,

---

[4] At the hearing, Mr. DeGrange expressed uncertainty as to whether that was in fact the lawyer's name. (Partial Tr., 5:12–5:13).  Plaintiff contends that no one named "Brett" worked at Bode & Grenier during the relevant time period.  (Partial Tr., 34:4–35:7).  According to Plaintiff, Mr. DeGrange first spoke with Mr. Grenier.  Pl.'s Resp. Ex. 2 ¶ 14.

and I [Mr. DeGrange] would be covered by the County's insurance". *Id.* at ¶ 3.  Mr. DeGrange asked on multiple occasions whether the Plaintiff would be going after him. *Id.*  Mr. Cowden repeatedly assured him that "they were not going to sue [him] personally." *Id.*  When the lawsuit was ultimately filed, Mr. DeGrange "had no idea they were going to sue [him] personally for five million dollars and for punitive damages." *Id.* at ¶ 6.

On approximately the fourth or fifth occasion that Mr. DeGrange spoke with Mr. Cowden, they discussed a potential lawsuit Mr. DeGrange could bring for overtime pay at FCADC. *Id.* at ¶ 5.  Mr. DeGrange thought Mr. Cowden "was trying to help [him]." *Id.*  Mr. Cowden introduced Mr. DeGrange to other attorneys who handled those types of cases. *Id.*.  At no point did Mr. DeGrange believe that the attorneys introduced by Mr. Cowden were also attorneys at Bode & Grenier, or were in any way connected to the instant lawsuit.  (Partial Tr., 20:3–20:21).

Mr. Cowden reached out to Mr. DeGrange by telephone at least twice between July 3, 2012 and October 23, 2012 for the purpose of determining whether Mr. DeGrange had located a CD containing FCADC policies and procedures, and to clarify whether FCADC Correctional Officers were Deputy Sheriffs.  Cowden Decl. ¶¶ 11–16.  Mr. Cowden met with Mr. DeGrange in person on October 23, 2012, and Mr. DeGrange signed two additional declarations at that meeting.  Cowden Decl. ¶ 16.  The declarations outlined the role of correctional officers at FCADC and described Mr. DeGrange's account of the events surrounding Mr. Hanlin's suicide at the prison.  Defs.' Mot. Ex. 5, A, D.  Before the present action was filed on June 14, 2013, Mr. Cowden informed Mr. DeGrange that they could no longer communicate, and the two have not been in contact since that conversation.  Cowden Decl. ¶¶ 18–19; DeGrange Aff. ¶ 9.

## II.   ANALYSIS

The Defendants allege that Plaintiff's counsel violated Rules 4.1, 4.3, 4.4, and 8.4 of the Maryland Rules of Professional Conduct ("MRPC").[5]   This district applies the Rules of Professional Conduct as they have been adopted by the Maryland Court of Appeals.   Local Rule 704 (D. Md. 2011).   The Defendants ask this Court to disqualify Plaintiff's counsel from representing Ms. Hanlin-Cooney, as sanctions for the alleged ethical breach.   Defs.' Mot.  1–3. In the alternative, the Defendants ask that this Court sanction Plaintiff's counsel by precluding their use of any information obtained from Mr. DeGrange in this litigation, or by imposing other sanctions that this Court deems appropriate.   *Id.*

"Disqualification is a drastic remedy since it deprives litigants of their right to freely choose their own counsel."   *Gross v. SES Americom, Inc.*, 307 F. Supp. 2d 719, 722 (D. Md. 2004).   The movant bears the burden of proof and must "satisfy a high standard" that disqualification is warranted.   *Harris v. Keystone Ins. Co.*, No. CCB-13-2839, 2013 WL 6198160, at *2 (Nov. 26, 2013).   "Disqualification at the urging of opposing counsel is permitted only "[w]here the conflict is such as clearly to call into question the fair and efficient administration of justice."   *Gross*, 307 F. Supp. 2d at 723.   In lieu of disqualification, the district court may fashion a less severe remedy.   *See Hudak v. I.R.S.*, MJG-11-1271, 2012 WL 6726705, at *5 (D. Md. Dec. 26, 2012).

A district court has the inherent power to impose sanctions.   *See United States v. Shaffer Equip. Co.*, 11 F.3d 450, 461–62 (4th Cir. 1993).   This Court, as well as other courts within this Circuit, have held that a moving party must prove misconduct by clear and convincing evidence. *See Glynn v. EDO Corp.*, JFM-07-1660, 2010 WL 3294347 (D. Md. Aug. 20, 2010) (stating that

---

[5] Initially, the Defendants alleged that Plaintiff's counsel also violated Rule 4.2.   *See* Defs.' Mot. 19–26. However, the Defendants have abandoned that argument.   They now allege that Rule 4.4 governs, but that the cases in this district interpreting Rule 4.2 still control.   *See* Defs.' Reply 5.

"proving misconduct occurred by clear and convincing evidence, as opposed to by a mere preponderance, certainly suffices.") (internal quotations omitted); *see also Balcar v. Bell and Assoc., LLC*, 295 F. Supp. 2d 635, 640–41 (N.D.W. Va. 2003) (finding that the court should require proving misconduct by clear and convincing evidence, in line with precedent from other circuits). The Fourth Circuit, sitting in a disciplinary hearing, applied a clear and convincing standard to violations arising under the New York Rules of Professional Conduct. *In re Liotti*, 667 F.3d 419, 423 (4th Cir. 2011). The Court derived that standard from the American Bar Association Standards for Imposing Lawyer Sanctions. *See* ABA Standards § 1.3. Likewise, the Maryland Rules require a court sitting as a disciplinary hearing to place upon the petitioner "the burden of proving the averments of the petition by clear and convincing evidence." Maryland Rules § 16-757. Therefore, I may only impose sanctions if the Defendants have established violations by clear and convincing evidence.

This decision is being rendered prior to the continued evidentiary hearing because, after presenting their evidence in full, the Defendants have not met their evidentiary burden that disqualification is warranted, or that alternative sanctions are appropriate. In reaching this decision, I have considered the evidence in the light most favorable to the Defendants, as the moving party. However, to the extent that Mr. DeGrange's statements at the hearing conflicted with statements he made in his affidavit, I have discounted the probative weight of his self-serving written statements. *See Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996) (striking portions of a party's affidavit because "we generally consider self-serving opinions without corroboration not significantly probative"). The Defendants presented evidence that, even under the most liberal construction, does not support their allegations of professional misconduct, and, in fact, proved highly unreliable. Mr. DeGrange had, at best, a limited recollection of his communications with Plaintiff's counsel, and the details that he could

recall contradicted the statements in his own affidavit.  The Defendants' only other witness, Mrs. DeGrange, had no first-hand information bearing on whether Plaintiff's counsel committed misconduct.  Accordingly, the Defendants have fallen far short of the "high" standard required to prove a need to disqualify Plaintiff's counsel.  *See Gross*, 307 F. Supp. at 722.  The Defendants also have not shown clear and convincing evidence of conduct that warrants sanctions.  Even if this Court were to apply the lower preponderance standard, that burden would not be met.

At a continued hearing, Plaintiff's witnesses would testify.  If those witnesses were credible in their denial of misconduct, Defendants' motion would be denied.  Even if Plaintiff's witnesses proved not credible, the Defendants still would not have satisfied their burden as the moving party, and their motion would still be denied.  The continued hearing is therefore unnecessary, and will be removed from the calendar.

### A.  Rule 4.1

The Defendants allege that Plaintiff's counsel violated Rule 4.1 by falsely leading Mr. DeGrange to believe that, if sued, he would be covered by Frederick County's insurance.  The Defendants rely on Mr. DeGrange's sworn statements that, "Mr. Cowden assured me I had nothing to worry about, and that they were not going to sue me personally," DeGrange Aff. ¶ 3, and, "Mr. Cowden advised me that the County has insurance, and the insurance company was going to take care of it."  *Id.* at ¶ 10.  The Defendants further rely on an email that Mr. Cowden sent to Defendants' counsel, which stated that, "Mr. DeGrange's apparent perception that any liability would be covered by insurance may be accurate.  . . .  I said I thought insurance existed for this matter (including legal representation), but I did not claim to know the full extent of insurance coverage."  Defs.' Mot. Ex. G.  The Defendants make the claim that Mr. DeGrange was prejudiced in his interactions with the Plaintiff's attorneys because he believed that he would not be subject to financial liability.  Defs.' Reply ¶ 17.  Mr. DeGrange stated that he would not

have spoken with the Plaintiff's attorneys had he thought he might put himself at risk.  DeGrange Aff. ¶ 7.

Rule 4.1 states that, "[i]n the course of representing a client a lawyer shall not knowingly . . . make a false statement of material fact or law to a third person."  Md. R. Prof'l Conduct 4.1(a)(1).  Lawyers have a duty to be "truthful," but have "no affirmative duty to inform an opposing party of relevant facts."  *Id.* at cmt. 1.  Rule 4.1 only contemplates violations where an attorney either "knowingly" makes a misleading statement, or "incorporates or affirms a statement of another person that the lawyer knows is false."  *Id.*  By definition, the rule requires "actual knowledge of the fact in question," although knowledge "may be inferred from circumstances."  Rule 1.0(g).  Maryland has "substantially adopted" the ABA Model Rules of Professional Conduct.  *Brown & Sturm v. Frederick Rd. Ltd. P'ship*, 137 Md. App. 150, 179 (2001); *see also Ausherman v. Bank of Am. Corp.*, 212 F. Supp. 2d 435, 445 (D. Md. 2002) ("[MPRC Rule 4.1] is identical to the ABA Model Rule of the same number.").  Treatises on ABA Model Rule 4.1 have cited to the Second Circuit case, *Slotkin v. Citizens Casualty of New York*, 614 F.2d 301 (2d Cir. 1979), which considered the issue of misrepresentations regarding insurance coverage.  *See, e.g.*, Legal Ethics, Law. Deskbk. Prof. Resp. § 4.1-2 (2013-2014 ed.). In *Slotkin*, the plaintiffs reached a settlement relying on statements by the defendant's counsel that the defendant's insurance only covered up to $200,000.00.  614 F.2d at 314.  Although the defendant's counsel denied actual knowledge at the time he made the representation, in fact, the attorney possessed documents evidencing the defendant's excess coverage up to $1 million.  *Id.* at 308.  The Second Circuit ruled that the attorney's "reckless indifference to error" could constitute sufficient knowledge to establish fraud.  *Id.* at 314.  The attorney subsequently was disciplined for his conduct.  *Matter of McGrath*, 468 N.Y.S.2d 349 (N.Y. App. Div. 1983).

Rule 4.1 requires that the misrepresentation concern a "material fact."  Md. R. Prof'l Conduct 4.1(a)(1).  While neither the word "material" nor "fact" is expressly defined in the Rule or its commentary, it is clear that the Rule does not apply to opinions.  Legal Ethics, Law. Deskbk. Prof. Resp. § 4.1-2 (2013-2014 ed.).  Maryland cases shed little light on the term, but in the context of a settlement negotiation, "[a] fact is material to a negotiation if it reasonably may be viewed as important to a fair understanding of what is being given up and, in return, gained by the settlement."  *Ausherman*, 212 F. Supp. 2d at 449.  Thus, a fact may be material if it is relevant to a person's decision of how to act, and "it seldom is a difficult task to determine whether a fact is material."  *Id.*  Mr. DeGrange alleges that the statements were material because if Mr. Cowden had informed him that the Plaintiff could "come after [his] things," he would have told Mr. Cowden, "[w]e're done."  DeGrange Aff. ¶ 7.

Under those legal standards, and ascribing full credit to the allegations in Mr. DeGrange's affidavit, I do not find that the Defendants have established a violation of Rule 4.1 by clear and convincing evidence.  Mr. DeGrange stated in his affidavit that Mr. Cowden assured him that "they were not going after [him], and nothing was going to be taken from [him]."  *Id.* at ¶ 7.  According to the affidavit, Mr. Cowden repeatedly assured Mr. DeGrange that the Plaintiff was "going after the County, and [Mr. DeGrange] would be covered by the County's insurance." *Id.* at ¶ 3.  These statements do not rise to the level of a violation because the Defendants have failed to establish that they are misrepresentations.  Rule 4.1 concerns *false* statements of fact by an attorney.  Here, Mr. DeGrange alleges that he was "*told* the County's insurance does not have coverage for punitive damages and the County's insurance would not pay any judgment for punitive damages."  *Id.* at ¶ 7 (emphasis added).  He does not specify the source of the statements and, even if he had, the statements would be hearsay.  The Defendants have produced

no admissible evidence proving that Mr. Cowden's statements were indeed false, or that any liability ascribed to Mr. DeGrange would fall outside the scope of the County's insurance.

The Defendants, therefore, have not established that Mr. Cowden knowingly deceived Mr. DeGrange about the extent of the County's insurance coverage. Although the Second Circuit, in *Slotkin*, held that a "reckless indifference to error" is sufficient for finding a violation, 614 F.2d at 314, the Defendants have failed to demonstrate even that level of scienter. The Defendants do not allege that Mr. Cowden, who represents the Plaintiff, not the County, possessed any knowledge of the scope of the County's insurance. Cases from Maryland have found Rule 4.1 violations only where the delinquent attorney actually possessed the information about which there was a misrepresentation. *See Attorney Grievance Comm'n of Maryland v. Brown*, 415 Md. 269, 278 (2010) (finding an attorney's statements that he had signed a release violated Rule 4.1 because "at the time [he] made them, he knew them to be untrue"); *Attorney Grievance Comm'n v. Hekyong Pak*, 400 Md. 567, 587-88 (2007) (finding an attorney violated Rule 4.1 when she failed to correct a statement by another party that she knew to be incorrect at the time); *cf. Attorney Grievance Comm'n of Md. v. Levin*, 432 Md. 429, 450 (2013) (finding no Rule 4.1 violation where an attorney disregarded a written promise he had made, because it was not established that the attorney knew he would act otherwise when he wrote the letter). Since the Defendants have not established that Mr. Cowden knew the extent of the County's insurance at the time of his communications with Mr. DeGrange, or that Mr. DeGrange's belief that he would be covered by insurance was inaccurate, I find no clear and convincing evidence of a Rule 4.1 violation.

I similarly do not find that Plaintiff's counsel violated Rule 4.1 by failing to correct Mr. DeGrange's assumption that he would be covered by the County's insurance. If Mr. Cowden was uncertain of whether Mr. DeGrange would be exposed to potential personal liability, the best

course of action would have been to advise Mr. DeGrange to seek independent counsel.   I nonetheless find that Mr. Cowden's conduct, although perhaps less than commendable, did not rise to the level of a violation of the rules of professional conduct.

Although I credited Mr. DeGrange's affidavit for the purposes of the analysis above, I do not, in fact, find his allegations to be fully credible.   First, inconsistencies in Mr. DeGrange's affidavit, upon which the Defendants rely, undermine their position.   In his affidavit, Mr. DeGrange stated that Mr. Cowden "repeatedly" assured him that he would not "personally" be sued.  DeGrange Aff. ¶ 3.  Mr. DeGrange alleges that he had "no idea they were going to sue me personally for five million dollars and for punitive damages."   *Id.* at ¶ 6.   Nonetheless, Mr. DeGrange admitted that, "Mr. Cowden told me I would be named in Mr. Hanlin's lawsuit because I was a County employee."   *Id.*   The affidavit alone, therefore, raises questions as to whether the Defendants' allegations of misconduct arise out of Mr. DeGrange's misunderstandings of the legal process, or arise out of statements actually made by Mr. Cowden. Second, at the evidentiary hearing, Plaintiff's counsel challenged the veracity of certain statements made in the affidavit, as well as Mr. DeGrange's recollection of the precise conversations that he had with the Plaintiff's attorneys.   (Partial Tr., 26:11–28:2).   In the affidavit, Mr. DeGrange stated that, "I had learned they were going after one of the officers in Mr. Lihvarchik's lawsuit (Gilbert Sackett), trying to take his house, and I was concerned about that happening to me."   *Id.* at ¶ 3.  Mr. DeGrange admitted at the hearing that he does not own a home.   (Partial Tr., 42:9–42:25).   He further admitted that the Defendants' attorneys had prepared the affidavit for him, and conceded that he did not fully understand some of its contents.   (Partial Tr., 30:7–32:10; 59:14–60:5).   These challenges do not discredit the affidavit entirely, but they do gravely undermine its support of the Defendants' motion.

Of greater concern, at the hearing, the Defendants failed to establish that Plaintiff's counsel had assured Mr. DeGrange that he would be covered by the County's insurance, as alleged in the affidavit.  It is undoubtedly the case, as Plaintiff's counsel readily admitted in his email to opposing counsel, that Mr. DeGrange believed that he did not stand to lose anything financially.   *See* Defs.' Mot. Ex. G ("Mr. DeGrange's apparent perception that any liability would be covered by insurance may be accurate.").  What has not been established, however, is any specific instance when Plaintiff's counsel told Mr. DeGrange that he would be covered by insurance.  Mr. DeGrange only remembered that toward the end of his meetings with Plaintiff's counsel, he gained an understanding that the Plaintiff was not coming after him personally, and that the county had insurance for such legal matters.  (Partial Tr., 16:2–17:6).   Therefore, I find that the Defendants' allegations that Plaintiff's counsel misrepresented a material fact are not supported by clear and convincing evidence.

### B.  Rule 4.3

The Defendants next allege a violation of Rule 4.3 as a result of Mr. Cowden's "misleading communications and improper legal advice" concerning whether Mr. DeGrange would be covered by Frederick County's insurance.  Defs.' Mot. 17–18.  The Defendants also suggest a violation of Rule 4.3 for Plaintiff's counsel's efforts to connect Mr. DeGrange with separate counsel regarding a potential overtime wage lawsuit.  *See* Defs.' Reply 11–12.  These arguments are without merit.  Rule 4.3 states in its entirety that:

> [i]n dealing on behalf of a client with a person who is not represented by counsel, a lawyer shall not state or imply that the lawyer is disinterested. When the lawyer knows or reasonably should know that the unrepresented person misunderstands the lawyer's role in the matter, the lawyer shall make reasonable efforts to correct the misunderstanding.

Md. R. Prof'l Conduct 4.3.  The comment to Rule 4.3 provides two directives to lawyers.  First, it instructs counsel to identify their client and their client's interests when dealing with

unrepresented individuals.  *Id.* at cmt. 1. The comment warns that unrepresented, inexperienced individuals "might assume that a lawyer is disinterested in loyalties, or is a disinterested authority on the law even when the lawyer represents a client."  *Id.*  Second, Rule 4.3 also prohibits lawyers from giving advice to an unrepresented person, other than the advice to secure counsel, "if the lawyer knows or reasonably should know that the interests of such person are or have a reasonable possibility of being in conflict with the interests of the client."  *Id.* at cmt. 2.

I do not find that Plaintiff's counsel violated Rule 4.3 by failing to properly identify their client or her interests.  Mr. DeGrange readily admitted at the hearing that not only did he understand that Plaintiff's counsel represented the family of Mr. Hanlin, he also understood that he would be sued in connection with Mr. Hanlin's suicide.  (Partial Tr., 41:8–42:8).  Similarly, I find no violation of Rule 4.3 by virtue of Plaintiff's counsel's alleged statements to Mr. DeGrange concerning insurance.  It is quite clear that, in the present lawsuit, the interests of Plaintiff's counsel and the interests of Mr. DeGrange are adverse.  However, as noted above, the Defendants have not established any specific instance where Plaintiff's counsel made a definitive statement concerning insurance.  Even if the Defendants were to prove that Plaintiff's counsel affirmatively told Mr. DeGrange that he would be covered by the county's insurance, such a statement would not rise to the level of "legal advice."  Plaintiff's counsel did not advise Mr. DeGrange to take any action on account of alleged statements concerning insurance.  Indeed, any action that Mr. DeGrange would have taken in reliance on such statements is immaterial to his alleged conduct giving rise to this lawsuit.

Furthermore, I find no violation of Rule 4.3 for Plaintiff's counsel's efforts to put Mr. DeGrange in contact with attorneys regarding his potential overtime wage dispute.  Mr. DeGrange contends that he spoke with Mr. Cowden about FCADC practices, which required correctional officers to work beyond the periods for which they were paid.  *See* Cowden Decl. ¶

17.  Mr. DeGrange testified that Mr. Cowden introduced him to two attorneys, unaffiliated with Bode & Grenier, who handled wage cases.  (Partial Tr., 17:7–20:21).  Mr. DeGrange testified that Mr. Cowden participated in at least one conference call with the unaffiliated attorney, but he could not identify any legal advice offered by Mr. Cowden during that call.  (Partial Tr., 21:18–23:9.  On those facts, Mr. Cowden merely acted as a conduit between Mr. DeGrange and separate counsel, an action expressly allowed for in the commentary to Rule 4.3.  *See* Md. R. Prof'l Conduct 4.3 cmt. 2.  Accordingly, I find no violation of Rule 4.3.

### C.  Rule 4.4

The Defendants allege that Plaintiff's counsel violated Rule 4.4 and the cases in this district interpreting Rule 4.2, through their *ex parte* communications with Mr. DeGrange, a former employee of an adverse organizational party.    Defs.' Mot. 19.    The Defendants principally rely on two cases from this district, *Camden v. State of Maryland*, 910 F. Supp. 1115 (D. Md. 1996) and *Zachair, Ltd. v. Driggs*, 965 F. Supp. 741 (D. Md. 1997).  *Camden* interpreted Rule 4.2 as prohibiting a lawyer for one party from engaging in *ex parte* contact with a former employee of an adverse party, where the lawyer knows the former employee has been extensively exposed to confidential information.  *Camden*, 910 F. Supp. at 1122.  *Zachair* interpreted Rule 4.2 consistent with *Camden*.  *Zachair*, 965 F. Supp. at 753.  In the time since those cases have been decided, the MRPC have been amended to state unequivocally that Rule 4.4(b), not Rule 4.2, governs communications with former employees.  *See* 28.23 Md. Reg. 2022-27 (Nov. 16, 2001) (adopting amendments to Rules 4.2 and 4.4 of the MRPC effective January 1, 2002); Md. R. Prof'l Conduct 4.2 cmt. 6 ("Regarding communications with former employees, see Rule 4.4(b)."); *Chang-Williams v. United States*, No. DKC-10-783, 2012 WL 253440, at *4 (D. Md. Jan. 25, 2012) ("Comment 6 to Rule 4.2(b) specifically directs application of Rule 4.4(b) to former employees, whereas Rule 4.2(b) expressly applies to *current*

employees.") (emphasis in original).  The Defendants argue that while Rule 4.4(b) controls, the holdings of *Camden* and *Zachair* remain in force and prohibit an attorney from discussing confidential information of an adverse party with a former employee of that adverse party. Defs.' Reply 5.

Rule 4.4(b), states in relevant part that, "a lawyer representing a client in a matter shall not seek information relating to the matter that the lawyer knows or reasonably should know is protected from disclosure by statute or by an established evidentiary privilege, unless the protection has been waived."  Md. R. Prof'l Conduct 4.4(b).  The Comment explains that "present or former organizational employees or agents may have information that is protected as a privileged attorney-client communication or as work product.  A lawyer may not knowingly seek to obtain confidential information from a person who has no authority to waive the privilege."  *Id.* at cmt. 2.  The Defendants do not argue that Plaintiff's counsel obtained any information from Mr. DeGrange that was protected by the attorney-client privilege.  Rather, the Defendants contend that the information at issue related to internal affairs investigations and personnel matters, both of which are confidential and protected from disclosure by an exception to the Maryland Public Information Act ("MPIA").  Defs.' Reply 8.  Specifically, the Defendants point to § 10-616 of the Act, which curbs the general requirement of public access and requires that access to certain types of records be denied.  A custodian is required to "deny inspection of a personnel record of an individual, including an application, performance rating, or scholastic achievement information."  Md. Code. Ann. State Gov't § 10-616(i).  A custodian of personnel records must permit inspection by a "person in interest," defined as "a person or government unit that is the subject of a public record, or a designee of the person or governmental unit."  Md. Code. Ann. State Gov't §§ 10-611(f); 10-616(i)(2)(i).  The Defendants argue that Plaintiff's

counsel violated Rule 4.4(b) by seeking and obtaining confidential information exempt from disclosure under the MPIA.  I do not agree.

"Personnel records" are not defined in the MPIA.  However, the Court of Appeals of Maryland has consistently held that personnel records pursuant to § 10-616(i) of the MPIA include records "relating to hiring, discipline, promotion, dismissal, or any other matter involving an employee's status."  *Montgomery Co. Md. v. Shropshire*, 420 Md. 362, 379 (2011); *Kirwan v. The Diamondback*, 352 Md. 74, 83 (1998); *Governor v. Washington Post*, 360 Md. 520, 547 (2000).    Records of an internal affairs investigation pertaining to allegations of administrative misconduct, that, if true, would result in "employee discipline," also constitute "personnel records" within the meaning of § 10-616.  *Shropshire*, 420 Md. at 380.   Mr. DeGrange provided the Defendants with several of his own "personnel records," including his disciplinary records and an internal investigation memorandum regarding the death of William John Hanlin.  All of the records in question were provided to Mr. DeGrange by his employer, with no restriction on further dissemination.  (Partial Tr., 32:13–33:20). "The personnel record exemption is intended to address the reasonable expectation of privacy that a person in interest has in his or her personnel records."  *Maryland Dept. of State Police v. Maryland State Conference of NAACP Branches*, 190 Md. App. 359, 368 (2010).  The privacy interest is not vindicated by the exemption here, because the person in interest, Mr. DeGrange, voluntarily disclosed documents relating to his own employment to the requesting party.  Defendants cannot provide copies of such documents to their employee and then seek cover under the exemption, *post hoc*, for confidential information that the person whose records are at issue readily disclosed.  Given that the custodian of the personnel records at issue willingly permitted their inspection, I cannot find that  § 10-616(i) applies, and, thus, I find no violation of Rule 4.4(b).

While I find that Plaintiff's attorneys did not violate Rule 4.4(b), I must also decide whether their communications with Mr. DeGrange ran afoul of the holdings of cases in this district pertaining to one party's *ex parte* contacts with former employees of an adverse party. I recognize that the cases on the subject predate the amendments to Rules 4.2 and 4.4. However, the cases have not been overruled, and their reasoning remains instructive. "Courts in this district have consistently prohibited *ex parte* communications with former employees who have protected information, but have held that contact with former employees who do not have protected information does not violate the Rule." *Chang-Williams*, 2012 WL 253440, at *4. *See also Rogosin v. Mayor and City Council of Baltimore*, 164 F. Supp. 2d 684, 687 (D. Md. 2001) (noting the lack of agreement in the district regarding *ex parte* contacts with a former employee of an adverse party, but noting that no judge has held that Rule 4.2 bars *ex parte* contact with *all* former employees, and that the cases "do make clear that certain contacts are sanctionable and certain others are not"); *Collier v. RAM Partners, Inc.*, 159 F. Supp. 2d 889, 893 (D. Md. 2001) ("*Ex parte* contact with former employees of a party is prohibited...[when] the former employee has been '*extensively exposed*' to confidential information and there exists a risk that confidential information protected by the former employer's attorney-client privilege might be disclosed...") (emphasis in original) (citation omitted); *Sharpe v. Leonard Stulman Enterprises Limited Partnership*, 12 F. Supp. 2d 502, 508 (D. Md. 1998) (finding no violation of Rule 4.2 where plaintiffs' counsel interviewed   three of the defendant's former rental agent employees); *Davidson Supply Co., Inc. v. P.P.E., Inc.*, 986 F. Supp. 956, 958–59 (D. Md. 1997) (declining to apply Rule 4.2 to *ex parte* contacts with a former employee and denying defendants' motion for disqualification of plaintiff's counsel because the former employee was not an attorney or investigator, but a marketer and there were no issues of trade confidentiality).

The Defendants devote considerable argument to the lingering potency of the *Camden* and *Zachair* cases.  In *Camden*, the court concluded that disqualification of plaintiff's counsel was appropriate because the attorneys representing the plaintiff were exposed to an inordinate amount of an adverse party's confidential information through *ex parte* contacts with the adverse party's former employee.  Of note, at the time when plaintiff's counsel communicated with the former employee, the litigation was ongoing, and the former employee was previously the adverse party's "principal contact person" for the case.  *Camden*, 910 F. Supp. at 1117, 1122–23. It was the nature and degree of the confidential information exposed that led the court to hold that *ex parte* contact with the former employee of another party interested in the matter is prohibited under Rule 4.2, "when the lawyer knows or should know that the former employee has been extensively exposed to confidential client information of the other interested party." *Id.* at 1116.  Likewise, in *Zachair*, the court found a violation of Rule 4.2 where counsel for the plaintiff conducted an *ex parte* deposition with a former general counsel and vice-president of the defendants, who had been exposed to confidential information, including information protected by the attorney-client privilege.  *Zachair*, 965 F. Supp. at 753.

Unlike in *Camden* and *Zachair*, at the time when Plaintiff's counsel communicated with Mr. DeGrange, the instant lawsuit had not been filed.  Although Mr. DeGrange was a former employee of a would-be defendant, and indeed was a would-be defendant himself, the parties were not named adversaries.  The Defendants note that Frederick County was, in fact, a defendant in the *Fether* case, and that information gleaned from Mr. DeGrange was used to the detriment of the County in that case.  Defs.' Mem. 3–7.  However, there is no argument here that Mr. DeGrange was privy to any information protected by the attorney-client privilege.  In fact, no Bode & Grenier attorneys spoke with Mr. DeGrange after he was named a defendant in this case, and counsel for Frederick County had not even reached out to Mr. DeGrange when the

*Fether* lawsuit was filed.  *See* Cowden Decl. ¶ 7.  It appears from Mr. DeGrange's testimony that the information he shared was based on nothing more than his personal experience as a correctional officer.  (Partial Tr., 32:13–33:20).  Mr. DeGrange relayed his knowledge of the duties that correctional officers perform, he described his employment status at the time two of the inmate suicides took place, and he shared various facts regarding the suicide of Mr. Hanlin, including the housing conditions of the medical unit.  Defs.' Mot. Exs. A, D.

The Defendants suggest that the confidential nature of the information shared by Mr. DeGrange is well-established because a confidentiality order protecting similar information is in place in *Fether*.  Defs.' Reply 8–10.  In a recent ruling in the *Fether* case, Magistrate Judge Gauvey concluded that Frederick County's internal affairs investigative reports were "personnel records" pursuant to § 10-616(i) of the MPIA and thus, entitled to protection under the court's confidentiality order.  Judge Gauvey ordered any internal affairs investigative records to be filed under seal, and struck from the record an unsealed investigative report.  *Id.*  Here too, I have recognized that the documents shared by Mr. DeGrange are "personnel records," and I have also recognized the sensitive nature of those documents by granting the parties' requests to seal portions of the evidentiary hearing.  However, as discussed above, a finding that the documents are confidential, and that Plaintiff's counsel obtained the documents from Mr. DeGrange, does not, by itself, equate to a violation of Rule 4.4(b).

### D.  Rule 8.4

Finally, the Defendants allege several violations of Rule 8.4, pertaining to misconduct.  Defs.' Mot. 18.   Specifically, the Defendants argue that Plaintiff's counsel violated subsections (a), (e), and (h).  I disagree.  First, it appears that the Defendants have misidentified the relevant subsections.  No subsection (h) to Rule 8.4 exists, and subsection (e) deals exclusively with lawyer conduct that reflects "bias or prejudice based upon race, sex, religion, national origin,

disability, age, sexual orientation or socioeconomic status when such action is prejudicial to the administration of justice." Md. R. Prof'l Conduct 8.4(e).  The Defendants have not alleged that the actions of Plaintiff's counsel were discriminatory, and the Defendants have provided absolutely no evidence giving rise to a Rule 8.4(e) violation in their motion.  Accordingly, I find no merit to their 8.4(e) argument.  Subsection (a) of Rule 8.4 provides that it is professional misconduct for a lawyer to "violate or attempt to violate the [MRPC], knowingly assist or induce another to do so, or do so through the acts of another."  Md. R. Prof'l Conduct 8.4(a).  Given that I find that Plaintiff's counsel have not violated, or attempted to violate, any provisions of the MRPC, subsection (a) is not met.

It appears that the Defendants may have intended to assert violations of subsections (b), (c), and (d).  Giving the Defendants the full benefit of the doubt, I will address those subsections briefly.  Rule 8.4(b) states that it is professional misconduct for a lawyer to "commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects."  Md. R. Prof'l Conduct 8.4(b).  This subsection contains the approximate language that the Defendants attributed to the nonexistent Rule 8.4(h).  *See* Defs.' Mot. 18 ("Rule 8.4(h) provides that a lawyer shall not engage in any other conduct that adversely reflects on the lawyer's fitness as a lawyer.").  The Commentary to Rule 8.4 makes clear that Rule 8.4(b) only applies to conduct that is otherwise illegal.  Md. R. Prof'l Conduct 8.4 cmt. 2.  I do not find that Plaintiff's counsel committed any unlawful act.  Subsection (b), therefore, is not applicable here.

Violations of Rule 8.4(c) are frequently alleged in conjunction with Rule 4.1.  *See* Md. R. Prof'l Conduct 4.1 cmt. 1 ("For dishonest conduct that does not amount to a false statement . . . see Rule 8.4.).  The Rule states that it is professional misconduct to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation."  Md. R. Prof'l Conduct 8.4(c).  For conduct to rise to the level of a violation, it must be found to be intentional.  *Levin*, 432 Md. at 464 (citing

*Attorney Grievance Comm'n v. Clements*, 319 Md. 289, 298 (1990)).  "A misrepresentation is made when the attorney knows the statement is false and cannot be the product of mistake, misunderstanding or inadvertence."  *Id.* at 464-65 (citing *Attorney Grievance Comm'n v. Siskind*, 401 Md. 41, 68–69 (2007)).  Since the Defendants have not proven that Plaintiff's counsel acted dishonestly by knowingly making false statements, or that Mr. DeGrange's belief that he would be covered by insurance was even false, this Court finds no violation of Rule 8.4(c).

Rule 8.4(d) states that it is professional misconduct for a lawyer to "engage in conduct that is prejudicial to the administration of justice."  Md. R. Prof'l Conduct 8.4(d).  Rule 8.4(d) violations are often found in conjunction with violations of Rule 8.4(c).  *See Brown*, 415 Md. at 279 (holding that false statements to a client and Bar Counsel violated Rules 8.4(c) and (d) "because they were dishonest, deceitful, and impeded Bar Counsel's investigation, making them prejudicial to the administration of justice"); *Attorney Grievance Comm'n of Maryland v. Webster*, 402 Md. 448, 461 (2007) (accepting Petitioner's argument that a finding of a violation of Rule 8.4(d) for an attorney's misrepresentation that he had filed a motion for an emergency custody hearing when he had not was "virtually axiomatic" of a Rule 8.4(c) violation).  I find no violation of Rule 8.4(d), either by extension of Rule 8.4(c), or on its own.

**Conclusion**

For the foregoing reasons, Defendants' Motion for Appropriate Relief is DENIED.  A separate order follows.

Dated:  <u>July 9, 2014</u>                                    <u>        /s/        </u>

                                                                    Stephanie A. Gallagher
                                                                    United States Magistrate Judge